# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| LEIGH A. ANDERSON, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:22-CV-00236- |
| v. | § | SDJ-AGD |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g), denying her claim for disability and disability insurance benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the court recommends that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

### I.    PROCEDURAL HISTORY OF THE CASE

On May 26, 2020, Plaintiff Leigh A. Anderson ("Plaintiff") filed an application for disability and disability insurance benefits under Title II ("Title II") of the Social Security Act, and on May 9, 2020, Plaintiff filed an application for supplemental security income under Title XVI ("Title XVI") of the Social Security Act (TR 267–71, 272–81).[1] Plaintiff alleges an amended onset of disability date of November 15, 2019 (TR 28). On September 3, 2020, the claims were

---

[1] The ALJ's decision states the date of application for Title II benefits is May 26, 2020, (TR 25), as does Plaintiff's Brief in Support of Plaintiff's Claim for Social Security Disability Benefits (Dkt. #9 at p. 1). The Commissioner's Brief in Support of the Commissioner's Decision lists the Title II application date as May 9, 2020, and the Title XVI application date as May 20, 2020 (Dkt. #11 at p. 2). However, the applications in the record are both dated May 9, 2020 (TR 271, 281). Similarly, the dates differ among Transcript documents and docket entries for the original onset of disability date, initial denial of Plaintiff's claim, and reconsideration of Plaintiff's claim. As neither of the Parties have raised any issue with the listed dates for each event, the court refers to the dates noted in the ALJ's decision.

initially denied (TR 25), and upon reconsideration on November 24, 2020 (TR 25), Plaintiff's applications were again denied. On December 9, 2020, Plaintiff requested an administrative hearing ("Hearing") (TR 196–97), which was held before an Administrative Law Judge ("ALJ") on June 11, 2021 (TR 46–66).[2] At the Hearing, the ALJ heard testimony from Plaintiff, Plaintiff's attorney representative, and a vocational expert ("VE") (TR 46–66). On September 24, 2021, the ALJ issued an unfavorable decision denying Plaintiff's applications (TR 22–40). On October 14, 2021, Plaintiff requested review of the ALJ's decision by the Appeals Council (TR 264–66). The Appeals Council denied Plaintiff's request on February 1, 2022, making the decision of the ALJ the final decision of the Commissioner (TR 3–8). On March 25, 2022, Plaintiff filed the instant lawsuit (Dkt. #1). On June 24, 2022, the Administrative Record was received from the Social Security Administration (Dkt. #7). Plaintiff filed her Opening Brief on July 25, 2022, (Dkt. #9), the Commissioner filed its Brief in Support of the Commissioner's Decision on September 12, 2022, (Dkt. #11), and Plaintiff filed her Reply Brief on September 22, 2022, (Dkt. #12).

## II.    STATEMENT OF RELEVANT FACTS

### 1.    *Age, Education, and Work Experience*

Plaintiff was born on February 4, 1983, making her thirty-six (36) years of age at the time of alleged onset of disability (TR 267, 272). Plaintiff's age classification at all relevant times was that of a "younger person." *See* 20 C.F.R. § 404.1563(c). Plaintiff did not graduate from high school but has a GED (TR 54), and the VE testified that her past work experience includes call center, 299.357-014, medication aide, 355.374-014, nurse aide, 355.674-014, and mental

---

[2] Plaintiff had a prior hearing with an ALJ on July 31, 2019 (TR 67–94). Plaintiff's attorney noted during the June 11, 2021, hearing that the prior hearing was in conjunction with a "very severe impairment to her lumbar spine," and the ALJ "then assessed her to light duty residual functional capacity and denied the claim" (TR 51).

retardation aide, 355.377-018 (TR 63). Plaintiff has not engaged in substantial gainful activity since November 15, 2019, the alleged date of onset of disability (TR 28, 51).

### 2. Relevant Medical Records

The ALJ found Plaintiff "has the following severe impairments: degenerative disc disease of the lumbar spine, status post fusion; lumbar radiculopathy; chronic pain syndrome; obesity; diabetes mellitus; peripheral neuropathy; major depressive disorder; generalized anxiety disorder" (TR 28). The ALJ also found Plaintiff has "the following non-severe impairment: GERD" (TR 28). Relevant to these conditions and the arguments raised by Plaintiff are the medical opinions and evaluations from Plaintiff's healthcare providers: Dereck A. Peery, D.O. ("Dr. Peery"), Lighthouse Behavioral Wellness Center ("Lighthouse"), Brian S. Lee, D.O. ("Dr. Lee"), and Leilani K. Oana, Ph.D. ("Dr. Oana"), as well as State Agency Psychological Consultants Joel Forgus, Ph.D., and Julian Lev, Ph.D. (together, "SAPCs"), and State Agency Medical Consultant, Laurence Ligon, M.D., and Scott Spoor, M.D. (together, "SAMCs"). The ALJ noted on several occasions that he considered the entire record in making his decision (TR 22–43). Plaintiff's sole issue is as follows: "The ALJ's mental RFC determination is not supported by substantial evidence as he failed to properly evaluate the opinion of consultative examiner Leilani K. Oana, Ph.D." (Dkt. #9 at pp. 1, 8). Accordingly, Dr. Oana's opinion is summarized below.

### a. Psychological Report – Dr. Oana

On August 29, 2018, Plaintiff appeared before Dr. Oana for a Psychological Report (TR 425–29). Dr. Oana observed that Plaintiff's mother drove her to the appointment (TR 426). Plaintiff appeared to be "of average height and above average weight" (TR 426). Plaintiff was dressed casually, had a lower-lip piercing, had conservatively styled, neat hair, was well-groomed, had clear speech, and had good posture (TR 426). Dr. Oana noted that Plaintiff, assisted by a cane,

walked with a limp (TR 426). Plaintiff was "cooperative and forthcoming" (TR 426). Dr. Oana noted that Plaintiff's chief complaints included: (1) Plaintiff "feels that she is unable to work"; (2) Plaintiff reported her upcoming back surgery; and (3) Plaintiff stated she had "bad anxiety and panic attacks" and diabetes that "is out of control" (TR 426).

Under "History of Present Illness," Dr. Oana reported Plaintiff's education history, that Plaintiff obtained a GED after dropping out of high school in the 11th grade, and that Plaintiff reported having obtained her certified nurse's aide and certified medication aide certificates from Grayson Community College (TR 427). Plaintiff's last job was at a call center, and she last worked on April 16, 2018, after she was fired for missing too many days (TR 427). Plaintiff expressed anxiety symptoms and depressive symptoms (TR 427).

Regarding Plaintiff's personal life, Dr. Oana noted that Plaintiff lives in an apartment with her boyfriend and two children (TR 427). Plaintiff reported to Dr. Oana "that she is independent with most of her daily living needs; she needs some help dressing" (TR 427). Dr. Oana reported that Plaintiff "is able to drive, tell time, count money, . . . use a computer[,] . . . can read, shop for groceries, prepare meals, pay bills, use a phone, do her own laundry, and use a microwave independently" (TR 427). Plaintiff reported that she has healthy and supportive relationships with her family and the few close friends she has, but that she has difficulty with authority figures "and people in general" (TR 427). Plaintiff "reports that it is difficult for her to complete tasks in a timely and appropriate manner due to her mood instability, and physical limitations" (TR 427). Dr. Oana noted that Plaintiff believes her symptoms have increased over the past year (TR 427). Finally, Dr. Oana noted that Plaintiff reported she has never attempted suicide, does not have homicidal ideations, does not use alcohol excessively, and does not use illicit drugs, but she was arrested for possession of marijuana in 2001 (TR 427).

Dr. Oana observed Plaintiff's mental status as follows: Plaintiff "seemed to be putting forth her best effort," which "was observed through her timely responses and effort given to each question/task" (TR 428). Dr. Oana noted "[n]o indications of loose associations, flight of ideas, circumstantial or tangential thought processes were revealed" (TR 428). Dr. Oana did not see any "indications of delusions, obsessions, compulsions, irrational fears, or homicidal/suicidal ideation[s]" (TR 428). Plaintiff reported that she did not experience hallucinations (TR 428). Dr. Oana noted that Plaintiff's "mood was depressed and anxious *per her report*" (TR 428). (Emphasis added). Plaintiff "was oriented for person, place, year, season, month, day of week and date," as well as "the president and state capitol" (TR 428). Regarding Plaintiff's memory, "[s]he knew her birth date and her social security number," and "4 of the last 4 presidents," and "[s]he could repeat 6 digits forward and 3 digits backward" (TR 428). In connection with Plaintiff's ability to concentrate, Plaintiff was able to complete 3/5 serial 7s correctly, count down from twenty, do simple addition and multiplication, "complete a 3-step instructional task[,] and spell WORLD forward and backward" (TR 429).

Ultimately, Dr. Oana listed her diagnosis as "296.32 Major depressive order, recurrent, moderate [and] 300.02 Generalized anxiety disorder" (TR 429). In assessing Plaintiff's functional capacity, Dr. Oana stated "it appears [Plaintiff] is able to understand, carry out, and remember instructions involving one and two steps" (TR 429). Dr. Oana opined that Plaintiff appeared unable to: (1) "carry out and remember complex instructions"; (2) "sustain concentration and persist in work-related activity and maintain a reasonable pace"; (3) "maintain effective social interaction on a consistent and independent basis, with supervisors, co-workers, and the public"; and (4) "deal with normal pressure in a competitive work setting" (TR 429).

### b. State Agency Psychological Consultants

At the initial level, Dr. Laurence Ligon ("Dr. Ligon") completed Plaintiff's disability determination that found a primary severe impairment for disorders of back-discogenic and degenerative and a secondary severe impairment for depressive, bipolar and related disorders (TR 102, 115). Dr. Ligon found that Plaintiff's alleged physical limitations caused by the severe impairments "are not fully supported by the medical or other evidence" (TR 104, 117). As to her physical residual functional capacity ("RFC"), Dr. Ligon found Plaintiff has exertional limitations for: occasionally lifting/carrying 20 pounds, and frequently lifting/carrying 10 pounds; standing and walking with normal breaks about 6 hours in an 8-hour workday; sitting for about 6 hours in an 8-hour workday with normal breaks; and unlimited push and/or pull with the exception of the lift/carry limitations (TR 105, 117–18). Plaintiff did not have postural, manipulative, visual, communicative, or environmental limitations (TR 105, 118). Dr. Ligon did not determine whether Plaintiff could perform her past relevant work as the Medical-Vocational Guidelines would direct a finding of "not disabled" given Plaintiff's age, education, and RFC (TR 107, 120). Dr. Ligon assessed Plaintiff's RFC as LIGHT with the exception of the physical limitations addressed in the disability determination (TR 108, 121).

Regarding Plaintiff's Mental RFC, Joel Forgus, Ph.D., ("Dr. Forgus") found Plaintiff was "Moderately limited" in her ability to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting (TR 106–07, 119–20). Dr. Forgus also found that Plaintiff was "Markedly limited" in her ability to carry out detailed

instructions (TR 106, 119). However, Dr. Forgus found that Plaintiff was "Not significantly limited" in her ability to carry out very short and simple instructions; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision, to work in coordination with or in proximity to others without being distracted by them; to make simple work-related decisions; to interact appropriately with the general public; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others (TR 106–07, 119–20). Dr. Forgus explained that Plaintiff's alleged mental limitations are not supported by the objective medical evidence (TR 107, 120).

On reconsideration, Scott Spoor, M.D. ("Dr. Spoor") found the same exertional limitations as Dr. Ligon, with the exception of further limiting Plaintiff's ability to stand and/or walk to 2 hours, rather than 6 (TR 136, 156). Additionally, Dr. Spoor found that Plaintiff's postural limitations were that she could occasionally climb ramps, stairs, ladders, ropes, or scaffolds; balance; stoop; kneel; crouch; and crawl (TR 136–37, 156–57). Dr. Spoor found that "[t]he statements made by the claimant regarding impairment related functional limitations and restrictions cannot reasonably be accepted as consistent with the objective medical evidence or other evidence in the case record" (TR 137, 157). Ultimately, Dr. Spoor reached the same conclusion as at the initial level, finding Plaintiff's physical RFC is LIGHT (TR 143, 163). Julian Lev, Ph.D. ("Dr. Lev") affirmed the initial assessment of Plaintiff's mental RFC (TR 141, 161).

### 3. *Hearing Testimony*

#### a. **Plaintiff's Testimony**

On June 11, 2021, the ALJ held a Hearing (TR 46–66). At the Hearing, the ALJ questioned Plaintiff, as did Plaintiff's attorney. Plaintiff answered questions from the ALJ regarding her personal life, her symptoms, and her limitations related to work and engaging in daily life activities (TR 53–58). Plaintiff testified that she has a hard time concentrating long enough to read a book or watch television (TR 54). Plaintiff discussed her use of a cane and how she needs the cane for walking and balancing (TR 55–56). The ALJ asked the Plaintiff where her pain falls on a scale of 1 to 10 on an average day, to which Plaintiff replied, "[a]bout a 7" (TR 57). Plaintiff said she can do work around the house, but it takes longer than normal due to back pain (TR 58).

When questioned by her attorney, Plaintiff stated that she has a hard time sitting in a chair for more than 10 minutes, that she has difficulty standing for more than 10 minutes, and that she can move grocery store items from the shelf to the cart, but that she cannot carry them into the house (TR 59). Plaintiff testified that she gets drowsy with her medication and must take naps throughout the day (TR 60). Finally, Plaintiff testified that she is unable to do a sedentary job because of her back pain and difficulty with concentration (TR 61).

#### b. **VE's Testimony**

The VE testified about Plaintiff's past employment history, noting three occupations classified as medium and one as sedentary (TR 63). The ALJ posed three hypotheticals to the VE and asked whether a person with such limitations in the hypotheticals could perform Plaintiff's past relevant work (TR 63–64). Plaintiff's attorney also questioned the VE with hypothetical limitations (TR 64–65). The VE first classified Plaintiff's past work as follows:

Q:    Thank you. Can you tell me about [Plaintiff's past work] please?

A:    Sure. Past work includes the call center, 299.357-014, sedentary, 3. We have medication aide, 355.374-014, medium, 4. Nurse aide, 355.674-014, medium and 4. Mental retardation aide, 355.377-018, medium and 6. And, that's it.

(TR 63). The ALJ then posed hypothetical limitations to the VE, asking which past work a person

could perform with the various limitations proposed. The VE testified that an individual with the

limitations in the first hypothetical would not be able to perform Plaintiff's past work.

Q:    Thank you, sir. If you could, please assume a hypothetical individual of the claimant's age and education. Further assume the individual has the same past work, as well as the work experience, and they are capable of lifting and/or carrying 20 pounds on occasion, ten pounds frequently, can sit for six hours out of an eight-hour day, walk and/or stand for two hours out of an eight-hour day. Pushing and pulling would be unlimited, except for the lifting and carrying restrictions, occasional climbing of ramps and stairs, as well as balancing, stooping, kneeling, crouching and crawling.

No climbing of ladders, ropes or scaffolds. Can understand, remember and carry out simple instructions. Is able to use appropriate judgment to make simple work-related decisions. Can maintain attention and concentration to perform simple, repetitive tasks. Can work in proximity with coworkers and supervisors provided they do not have to work in collaboration to complete work tasks. And, can tolerate a low level of work pressure which I will define work that doesn't have to require multi-tasking, significant independent judgment or contact with the public. Would the hypothetical individual be capable of performing any of the claimant's past work?

A:    No, Judge.

Q:    And would there be any work available in the national economy for such an individual?

A:    Yes, Judge. Examples include hand mounter, 976.684-018, sedentary, 2, 18,000. Lens inserter, 713.687-026, sedentary and 2, 100,000. Cutter and paster, 249.587-014, sedentary and 2, 136,000.

Q:    Would there be any impact on those jobs and those numbers you provided if the individual were going to require the use of a single point cane for ambulation?

A:    No, Judge.

Q:    The same jobs and in the same numbers are still available?

A:      Yes, Judge.

Q:      And, what if the individual were not going to be able to maintain attention and concentration for two-hour increments? Do you need further clarification on that hypothetical or are you able to provide an answer?

A:      No, Judge, I don't. They would not be able to maintain competitive work.

Q:      Has your testimony been consistent with the DOT?

A:      Yes, it's also consistent with SSR rulings and it's also consistent with my training and experience.

(TR 63–64). Plaintiff's attorney representative cross-examined the VE, adjusting the ALJ's hypothetical RFCs to include additional limitations, as follows:

Q:      Mr. Hildre, if we take a hypothetical individual that we have been discussing, but this person is going to be off task approximately 15 percent of the day, would that hypothetical individual be able to do any of the claimant's past work or any other work in the national economy?

A:      No.

Q:      And then, if they were to be absent at least, let's say, one time a week or four times total in a month, would that hypothetical individual be able to perform any of the claimant's past work or any other jobs?

A:      No, they wouldn't.

Q:      Thank you, Your Honor, I have no further questions.

(TR 65).

## III.    FINDINGS OF THE ALJ

### 1.  *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of her disability claim is not disabled. *Id.* at § 404.1520(b). Second,

the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience. *Id.* at § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* at § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if she can perform her past work based on her residual functional capacity. *Id.* at § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. *Id.* at § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability, and at the last step, the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

### 2.  *ALJ's Disability Determination*

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation (TR 28–35). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 15, 2019, the date of alleged onset (TR 28). At step two, the ALJ found Plaintiff has severe impairments for degenerative disc disease of the lumbar spine, status post fusion; lumbar radiculopathy; chronic pain syndrome; obesity; diabetes mellitus; peripheral neuropathy; major depressive disorder; and generalized anxiety disorder (TR 28). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926) (TR 28). At step four, the ALJ determined Plaintiff has the following RFC:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can sit for 6 hours in an 8-hour workday; she can walk and/or stand for 2 hours in an 8-hour workday; she can push/pull unlimited except for the lift/carry restrictions; she would need to use a single point cane for ambulation; she can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; no climbing of ladders, ropes or scaffolds; she can understand, remember, and carry-out simple instructions; she is able to use appropriate judgement to make simple work related decisions; she can maintain attention and concentration to perform simple repetitive tasks; she can work in proximity with co-workers, supervisors provided they do not have to work in collaboration to complete tasks; she can tolerate a low level of work pressure defined as work that does not require multitasking, significant judgement, or contact with the public.

(TR 31). Continuing the step four analysis, the ALJ determined that Plaintiff is unable to perform past relevant work (TR 33). Finally, at step five, the ALJ determined that based on Plaintiff's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform" (TR 34). The ALJ found that, based on the VE's testimony, Plaintiff

would be able to perform the requirements of representative occupations such as (1) hand mounter (DOT # 976.684-018), of which there are 18,000 jobs in the nation; (2) lens inserter (DOT # 713.687-026), of which there are 100,000 jobs in the nation; and (3) cutter and paster (DOT # 249.587-014), of which there are 136,000 jobs in the nation.

(TR 35). Based on this determination, the ALJ concluded Plaintiff was not disabled from November 15, 2019, through the date of the ALJ's decision, September 24, 2021 (TR 35).

## STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, No. 20-60856, 2021 WL 5563333, at *1 (5th Cir. Nov. 29, 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted));

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence "need not be a preponderance." *Webster*, 2021 WL 5563333, at *1 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). Conflicts in the evidence are resolved by the ALJ; the court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Social Security Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by the five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff's sole issue is whether the "ALJ's mental RFC determination is . . . supported by substantial evidence" (Dkt. #9 at p. 1). Plaintiff believes the ALJ "failed to properly evaluate the opinion of consultative examiner Leilani K. Oana, Ph.D." (Dkt. #9 at p. 1).

*The ALJ Properly Considered Plaintiff's Mental Limitations in the RFC and did not Substitute His Own Lay Medical Opinion*

The RFC is an assessment based on all the relevant evidence of a claimant's maximum ability to do work on a sustained basis in an ordinary work setting despite his or her impairments.[3] 20 C.F.R. § 404.1545(a); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC is the most a claimant is able to do despite her physical limitations. The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ is not required to incorporate limitations in the RFC he finds unsupported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991); *Kozlowski v. Colvin*, No. 4:13-cv-020-A, 2014 WL 948653, at *7 (N.D. Tex. Mar. 11, 2014). The inquiry for the court "is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *see Perez v. Barnhart*, 416 F.3d 457, 461 (5th Cir. 2005); *Jones v. Saul*, No. 4:20-CV-00772-BP, 2021 WL 2895867, at *4–5 (N.D. Tex. July 9, 2021) (finding no error where the ALJ determined that [the treating physician's] opinion was inconsistent with the record as to the limitations he expressed). An ALJ's RFC decision can be supported by substantial evidence even if he does not specifically discuss all the evidence that supports his decision, or all the evidence that he rejected. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

The Social Security Administration's new rule for assessing medical opinion evidence governs all claims filed on or after March 27, 2017, including Plaintiff's here. *See* 20 C.F.R. § 404.1520c. The old rule required the ALJ to give a treating physician's opinion "controlling

---

[3] When considering a claimant's RFC, the Commissioner assesses an applicant's physical, mental, and sensory abilities, evaluates how those abilities apply to that applicant's work-related functioning, and finally considers whether that applicant can sustain work-related activities in a work setting on a regular and continuing basis. *See* 20 C.F.R. § 404.1545(b)–(d); S.S.R. 96-8p, 1996 WL 374184 at *3–4.

weight" in the absence of specific mitigating factors, and to "always give good reasons" in the determination for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). The new rule eliminates the "controlling weight" given to treating physicians. 20 C.F.R. § 404.1520c(a). A medical opinion is a statement about what functional limits a claimant may have from an impairment. 20 C.F.R. § 404.1513(a)(2).

The new rule, 20 C.F.R. § 404.1520c, provides that the ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from the [claimant's] medical sources." 20 C.F.R. § 404.1520c(a).[4] Rather, the ALJ shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(a), (c)(1)–(5). However, supportability and consistency are the most important factors. *See* 20 C.F.R. §§ 404.1520(b)(2), 404.1520c(a). Supportability means the degree to which objective medical evidence supports the medical opinion at issue, and consistency looks to the consistency between different medical opinions across the

---

[4] In transitioning to the new rule, the administration noted, "[t]he current policies that focus upon weight, including the treating source rule, have resulted in reviewing courts focusing more on whether we sufficiently articulated the weight we gave opinions rather than on whether substantial evidence supports the Commissioner's final decision." *Webster v. Comm'r*, No. 3:19-cv-97-DAS, 2020 WL 760395, at *3 (N.D. Miss. Feb. 14, 2020). "In other words, the new rules are an attempt to eliminate confusion about a hierarchy of medical sources. . . . Reviewing courts, therefore, will now look first and foremost simply to whether substantial evidence exists to support an ALJ's opinion and not whether one opinion was correctly weighted in relation to any other(s)." *Id.*

record. 20 C.F.R. § 404.1520c(c)(1)–(2).[5] The new rule also changed the articulation requirements for how the ALJ considers each medical opinion. The new articulation requirements state:

> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1)–(2); *see Moore v. Comm'r*, No. 3:20-CV-241-SA-DAS, 2021 WL 2834395, at *2 (N.D. Miss. July 7, 2021) (finding that the medical source regulations do not "require the ALJ to expressly address the persuasiveness of every opinion within every report").

In the instant case, Plaintiff claims the ALJ erred by not including the mental limitations found by Dr. Oana in Plaintiff's RFC (Dkt. #9 at pp. 8–14). The Commissioner contends, "[t]he ALJ properly evaluated the opinion in accordance with the applicable regulations, and found it unpersuasive considering the factors of supportability and consistency" (Dkt #11 at p. 1). Before considering the medical opinion of Dr. Oana, the ALJ discussed Plaintiff's medical history (TR 32). In reviewing the entire record, the ALJ found the following:

> Treatment records show diagnoses of chronic pain syndrome, lumbar disc herniation, lumbar radiculopathy, and degenerative disc disease (Exhibit B3F). By way of history, the claimant reported low back pain that radiated to the buttocks

---

[5] "With respect to 'supportability,' 'the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase,'" and consistency is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Luckett v. Kijakazi*, No. 4:20-CV-04002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)) (quoting *Vellone v. Saul*, No. 1:20-CV-00261-RAK-HP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021). "Considering the newness of the regulations, there is a dearth of caselaw concerning what constitutes a sufficient 'explanation' of supportability and consistency under 20 C.F.R. § 404.1520c(b)(2)." *Liguez v. Kijakazi*, No. 4:20-CV-02798, 2021 WL 4943321, at *4 (S.D. Tex. Aug. 11, 2021), *report and recommendation adopted sub nom. Liguez v. Comm'r of Soc. Sec.*, No. 4:20-CV-2798, 2021 WL 4941997 (S.D. Tex. Oct. 22, 2021). But "this is not a case in which the ALJ found no medical opinion persuasive and crafted a completely distinctive RFC." *Id.* at *9.

and thighs and caused weakness in 2018 (Exhibit B2F). A June 2018 MRI of the lumbar spine showed advanced degenerative disc disease, specifically, multi-level disc protrusions and bulges with mild to moderate spinal canal stenosis, neural foraminal stenosis, moderate to marked disc space narrowing, but no significant central canal stenosis (Exhibit B1F). The claimant subsequently underwent a L3-S1 transforaminal lumbar interbody fusion (TILF) in November 2018 (Exhibit B3F). The claimant was doing well for several months where she reported that her functional capacity had improved and she had at least a 50 percent reduction in pain (Exhibit B3F). Approximately a year after her surgery, on November 15, 2019, the claimant reported experiencing a grinding sensation (Exhibit B3F/65). Musculoskeletal examination was normal with the claimant having normal gait, strength and sensation intact in all extremities, and normal and symmetric knee and ankle reflexes (Exhibit B3F/66). Treatment records continued to note that the claimant was receiving conservative medication management for her spine issues, she had no new or worsening back pain, radicular symptoms were stable, and she was tolerating medications well without difficulty (Exhibit B11F/9). The claimant reported "good results with current regimen, receiving 50 percent reduction in daily pain and having improved functional capacity" (Exhibit B11F/9, 28, B12F/8, 49, 68-69, 89, 110, 114, B13F/8-9, 29). However, the need for a revision fusion was discussed with the claimant requesting to hold off (Exhibit 3F/78, 12F/11). Overall, treatment records show that the claimant was treated conservatively with medication management, activity modification, and home physical therapy (Exhibit B11F, B12F, B13F).

Treatment records note that the claimant has diabetes mellitus with peripheral neuropathy (Exhibit B4F). The claimant has had high A1cs (Exhibit B6F/16, B14F/3, 6). However, it was noted multiple times that the claimant does not follow a diet and does not follow-up as directed (Exhibit B4F/38, 43, B14F/3). The claimant was treated conservatively with medication management, including increasing insulin, and counseled on adherence to a diabetic diet. Furthermore, the record contains no evidence to show that she required recurrent hospitalization or emergent treatment for complications of this condition. More specifically, there is also no substantial indication of end organ damage resulting from diabetes mellitus.

Regarding mental health impairments, the claimant received treatment through Lighthouse Behavioral Wellness (Exhibit B5F, B8F, B9F, B10F). Treatment records from Lighthouse show that the *claimant was responding to medications*. For example in August 2020, the *claimant reported that she was doing better* although she was still having depression, anxiety, and auditory hallucinations (Exhibit B10F/4; see also B8F/4). She was appropriately groomed and *mental status examinations were largely benign* (Exhibit B5F, B8F, B9F, B10F). During office visits for treatment for her physical impairments, mental status examinations were also relatively benign with some mood abnormalities such as depression and anxiousness (for example Exhibit B2F/4, B3F/33, 66, B4F/35, 40, 46, 51, B6F/16, B12F/10, 50, 70, 90, B13F/10, B14F/3, 6).

(TR 32). (Emphasis added).

The ALJ's Decision then assessed Dr. Oana's opinion as follows:

> The opinion at Exhibit B2F/5 is not persuasive as the evidence of record establishes claimant's impairments did not produce symptoms as severe as found in this opinion. Furthermore, the opinion is not consistent with the objective evidence of record and is based on a one time examination of the claimant. Furthermore, the undersigned notes that this opinion was provided prior to the alleged onset date.

(TR 33). Ultimately, the ALJ determined the objective medical evidence does not support the alleged limiting effects of the symptoms urged by Plaintiff:

> In sum, the [ALJ] finds that the medical evidence is not supportive of disability based upon the clinical findings and the totality of the evidence. *While the claimant has alleged that she is completely disabled* by her impairments and their limiting effects, *the objective evidence does not corroborate the allegations*. In considering the intensity, persistence, and limiting effects of the claimant's symptoms, they may produce some of the functional limitations she speaks of, but not to the extent that she is unable to satisfy the demands of regular work activity on a sustained basis. The reasonable limitations derived from the medical evidence of record and the claimant's testimony are accounted for in the residual functional capacity as explained above.

(TR 33). (Emphasis added). The ALJ may exercise judgment concerning Plaintiff's testimony and is not mandated to wholly accept all of Plaintiff's allegations as truthful. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). Indeed, an individual's statements standing alone cannot be conclusive evidence of disability. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The ALJ's analysis is sufficient to reject Plaintiff's subjective complaints. *See Shuler v. Berryhill*, No. 3:16-CV-1515-BH, 2017 WL 4298132, at *11 (N.D. Tex. Sept. 28, 2017) (citing *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991)) (the "ALJ properly discredited Plaintiff's subjective complaints of pain, and substantial evidence supports [her] decision," where the ALJ noted contradictory medical reports and daily activities).

Plaintiff argues that the ALJ improperly omitted any analysis of the supportability and consistency factors regarding Dr. Oana's opinion (Dkt. #9 at p. 10). However, the court finds that the ALJ properly articulated that he did not find Dr. Oana's opinion to be persuasive (TR 33). The

ALJ stated that he "ha[d] fully considered the medical opinions and prior administrative medical findings" and found that Dr. Oana's opinion was not supported by the record because "the evidence of record establishes claimant's impairments did not produce symptoms as severe as found in this opinion" (TR 33). Additionally, the ALJ specifically found that "the opinion *is not consistent* with the objective evidence of record and is based on a one time examination" and "was provided [more than 15 months] prior to the alleged onset date" (TR 33). (Emphasis added). Any statements by Dr. Oana as to whether Plaintiff can work is opinion evidence, which "is inherently neither valuable nor persuasive to the issue of whether [claimant is] disabled." See 20 C.F.R. § 404.1520b(c). The court finds the ALJ properly articulated his consideration of the objective medical evidence and the persuasiveness of the medical opinions, and substantial evidence supports the ALJ's mental RFC determination. *See Martinez v. Saul*, No. SA-20-CV-00869-ESC, 2021 WL 2253912, at *5–6 (W.D. Tex. June 3, 2021) (finding substantial evidence for the RFC where the ALJ considered all objective medical evidence in the record).

Also important to remember, the ALJ "does not have 'to state the weight given to each symptom and diagnosis in the administrative record.'" *Mary C. R. v. Kijakazi*, No. 3:20-CV-00286-BT, 2021 WL 4476764, at *3 (N.D. Tex. Sept. 30, 2021) (quoting *Michelle K. M. v. Berryhill*, 2019 WL 1243355, at *13 (N.D. Tex. Mar. 18, 2019)). And failure to "mention a particular piece of evidence does not necessarily mean that [the ALJ] failed to consider it" when the ALJ "states explicitly that [she] considered the entire record" in the opinion. *Id.* (quoting *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005)). Additionally, the ALJ is not required to state the RFC limitations in terms Plaintiff prefers, "so long as the decision shows that the ALJ considered those limitations in reaching the RFC determination." *See Brouwer v. Berryhill*, No. CV 18-2044, 2019 WL 4954606, at *7 (S.D. Tex. July 9, 2019) (citing *Bordelon v.*

*Astrue*, 281 F. App'x. 418 (5th Cir. 2008)); *Guillory v. Saul*, No. 1:19-CV-632, 2021 WL 1600283, at *11 (E.D. Tex. Apr. 23, 2021) (internal citations omitted) (affirming where the "ALJ's decision sufficiently reflects his substantial compliance with the requirements," noting "the ALJ cited the pertinent Regulations, which demonstrate their relevance in his deliberations of [p]laintiff's subjective symptoms," "the ALJ summarized evidence relevant to the factors," and "the ALJ articulated legitimate reasons for his decision"). The ALJ's review of the evidence demonstrates substantial compliance with the applicable regulations, and Plaintiff has not shown that the ALJ erred by doing so. *See Liguez v. Kijakazi*, No. 4:20-CV-02798, 2021 WL 4943321, at *9 (S.D. Tex. Aug. 11, 2021), *report and recommendation adopted sub nom. Liguez v. Comm'r*, No. 4:20-CV-2798, 2021 WL 4941997 (S.D. Tex. Oct. 22, 2021) ("The ALJ discussed the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. 416.920c.").

Even so, there is medical evidence supporting Plaintiff's mental RFC, including from the SAPCs and Dr. Peery, Dr. Lee, and Lighthouse. In fact, the ALJ crafted an RFC *more* limited than the SAPCs, but the ALJ cited objective medical evidence for the additional limitations: "During office visits . . . [Plaintiff's] mental status examinations were also relatively benign with some mood abnormalities such as depression and anxiousness (for example B2F/4, B3F/33, 66, B4F/35, 40, 46, 41, B6F/16, B12F/10, 50, 70, 90, B13F/10, B14F/3, 6)" (TR 32). For example, the evidence cited by the ALJ throughout the opinion includes the following assessments: (1) Plaintiff saw Dr. Peery at Mercy Memorial Clinic in Ardmore, Oklahoma, on numerous occasions between June 20, 2018, and May 27, 2020, and overall, Dr. Peery noted Plaintiff's mental status as "alert, oriented to person, place, and time, affect appropriate to mood" and Plaintiff's "Psych" as "[n]o overt psychosis or signs of depression" (TR 430–572); (2) Plaintiff saw Dr. Lee on numerous

occasions between March 29, 2018, and June 29, 2021, and when Dr. Lee noted Plaintiff's mental status, it was "alert and oriented x3," and Plaintiff's psychiatric status was "appropriate affect and demeanor; normal psychomotor function; normal speech pattern; normal thought and perception," while sometimes noting anxiety and depression (TR 574–650, 688–705); (3) Plaintiff presented to Lighthouse several times between January 14, 2020, and September 15, 2020, and each of the assessments noted Plaintiff's mental and psychological status as having an organized and coherent thought process, intact associations, good judgment, present insight, oriented x3, adequate recent and remote memory, adequate attention span and concentration, normal language, and no identifiable issues regarding knowledge, while occasional assessments noted hallucinations, anxiety, or depression (TR 651–87, 730–54); (4) and Plaintiff saw Dr. Peery again about once a month between August 21, 2020, and April 29, 2021, for a total of ten separate visits, and each time, Dr. Peery noted Plaintiff's mental status as "alert, oriented to person, place, and time, affect appropriate to mood" and "Psych" as "[n]o overt psychosis or signs of depression" (TR 755–965).

None of these medical records support or are consistent with Dr. Oana's pre-alleged-onset-date finding that Plaintiff is disabled based on her mental and psychological limitations (TR 425–29). In fact, Dr. Oana's own assessment is inconsistent in its findings. For example, Dr. Oana stated that Plaintiff "*could complete a 3-step instructional task*," but then Dr. Oana stated that Plaintiff "is able to understand, carry out, and remember *instructions involving one and two steps*" (TR 429) (Emphasis added). Neither of the SAPCs noted findings as severe as Dr. Oana's. Indeed, the SAPCs assessed Plaintiff around two years after Dr. Oana and found that the medical record did not support a finding that Plaintiff's symptoms "fully compromise[d her] ability to function independently, effectively, and appropriately, on a sustained basis at all levels" (TR 103, 116, 133, 153).

Considering the entire record, the ALJ determined that there were significant jobs in the national economy consistent with Plaintiff's RFC, and therefore, the Plaintiff was not disabled (TR 34–35). The ALJ did not err by fashioning an RFC based on the record as a whole. *See Fleming v. Saul*, No. SA-19-CV-00701-ESC, 2020 WL 4601669, at *7 (W.D. Tex. Aug. 10, 2020) (citing *Taylor*, 706 F.3d at 602–03) ("Although the ALJ did not adopt in its entirety any one medical opinion of record in fashioning his RFC, he also did not completely reject every opinion either. Instead, the ALJ properly evaluated all of the medical opinions in the record (none of which arose out of a treatment relationship) in accordance with the Section 404.1520c's more flexible methodology for analyzing opinion evidence and exercised his discretion to resolve conflicts in the evidence to assess the RFC based on all the relevant evidence in the record."). The court finds that the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record and a reasonable person could have come to the same conclusion as the ALJ. *See Cook*, 750 F.2d at 392. Therefore, the court finds no reversible error.

## CONCLUSIONS AND RECOMMENDATION

For the foregoing reasons, the court recommends the Commissioner's decision be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 14th day of September, 2023.**

AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE